## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

JASMINE NICOLE MORGAN, <u>et al.</u>,

      Plaintiffs,

         v.

WATER TOY SHOP, INC., <u>et al.</u>,

      Defendants.

CIVIL NO. 16-2540 (PAD)

## OPINION AND ORDER

Delgado-Hernández, District Judge.

This case arises out of a tragic accident, a collision between two jet skis -one ridden by plaintiffs Jasmin Nicole Morgan and Jarita Kennedy, and the other by Mark A. Castro- in the territorial waters of Puerto Rico (Docket No. 1).[1]  In essence, the complaint alleges that: (1) Castro was grossly negligent in operating the jet ski, seriously injuring plaintiffs (<u>id.</u> at ¶ 51); and (2) Water Toy Shop, Inc., Acosta Water Sports, Inc., and Axel Acosta, who rented the jet skis, did not adequately train Castro to operate the jet ski, and as owners of the jet ski that Castro was riding are liable for the damages claimed.  <u>Id.</u>

Before the court is defendants Water Toy Shop's, Axel Acosta's and Ironshore Indemnity, Inc.'s "Motion for Summary Judgment and Memorandum of Law in Support Thereof" (Docket No. 52), which plaintiffs opposed (Docket No. 61).  Defendants replied (Docket Nos. 69), and plaintiffs surreplied (Docket No. 73).  For the reasons explained below, the motion is GRANTED and plaintiffs' claims against the appearing defendants DISMISSED.[2]

---

[1] Collisions have been described as "the most feared catastrophe of every mariner." Thomas J. Schoenbaum, *Admiralty and Maritime Law*, Vol. 2, 103 (West 5th ed. 2011).

[2] Castro was sued and served with process, but failed to appear and the Clerk entered default against him (Docket No. 77).

# I.    SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56, summary judgment is appropriate when the record shows no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party.  A fact is material if it has the potential of determining the outcome of the litigation.  Farmers Ins. Exchange v. RNK, Inc., 632 F.3d 777, 782 (1st Cir. 2011)(quoting Rodríguez-Rivera v. Federico Trilla Regional Hosp. of Carolina, 532 F.3d 28, 30 (1st Cir. 2008)).

In assessing a motion for summary judgment, the court must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor.  Griggs-Ryan, 904 F.2d at 115 (citations omitted).  There is no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, and no room for the judge to superimpose his own ideas of probability and likelihood .  Greenburg v. Puerto Rico Maritime Shipping Authority, 835 F.2d 932, 936 (1st Cir. 1987).  The court may, however, safely ignore conclusory allegations, improbable inferences, and unsupported speculation.  Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted).

## II.    UNCONTESTED FACTS[3]

Plaintiffs are residents of Washington, D.C.   See, Docket No. 52-1, "Statement of Uncontested Material Facts in Support of Motion for Summary Judgment" ("SUMF" at ¶ 1). While vacationing in Puerto Rico, they rented a jet ski from Archie Jet Ski Rental (SUMF ¶ 4), the name used to advertise Water Toy Shop and Acosta Water Sports, two separate corporations that operate different jet ski rental stands in the Isla Verde beach area in Carolina, Puerto Rico.   See, PSUMF at ¶ 6 and defendants' response at Docket No. 69-1 pp. 26-27.[4]   Water Toy owned the jet skis involved in the accident, and operated the stand where the jet skis were rented.   SUMF ¶ 5; PSUMF ¶¶ 14, 6, 36.

In order to rent the jet ski, both plaintiffs signed a "Personal Watercraft Rental Operations Release of Liability, Waiver of Claims, Express Assumption of Risk and Indemnity Agreement" ("Rental Agreement") and a "Declaration of Fitness to Operate Personal Watercraft" ("Declaration of Fitness"). SUMF ¶ 7, ¶10.[5]   The Rental Agreements read as follows:

> PERSONAL    WATERCRAFT    RENTAL    OPERATIONS
> RELEASE OF LIABILITY, WAIVER OF CLAIMS, EXPRESS
> ASSUMPTION OF RISK AND INDEMNITY AGREEMENT

---

[3] Except otherwise noted, the facts included in this section are drawn from the parties' Local Rule 56 submissions (Docket No. 52-1, Docket No. 61-1, Docket No. 69-1).  Local Rule 56 is designed to "relieve the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute." CMI Capital Market Investment, LLC v. Gonzalez-Toro, 520 F.3d 58, 62 (1st Cir. 2008). It requires a party moving for summary judgment to accompany its motion with a brief statement of facts, set forth in numbered paragraphs and supported by citations to the record, that the movant contends are uncontested and material. Local Rule 56(b) and (e). The opposing party must admit, deny, or qualify those facts, with record support, paragraph by paragraph. Id. 56(c), (e). The opposing party may also present, in a separate section, additional facts, set forth in separate numbered paragraphs. Id. 56(c). While the district court may "forgive" a violation of Local Rule 56, litigants who ignore the rule do it "at their peril." Mariani-Colón v. Department of Homeland Sec. ex rel. Chertoff, 511 F.3d 216, 219 (1st Cir. 2007).

[4] At his deposition, Axel Acosta explained that these corporations operate separately, with their own permit and insurance. Their personnel, however, is interchangeably used. See, Plaintiffs' Exhibit 3 at p. 84, lines: 6-20. Water Toy Shop owns the stand adjacent to the San Juan Hotel, whereas Acosta Water Sports owns the stand adjacent to the Intercontinental Hotel.  See, PSUMF ¶¶ 6, 36.

[5] Plaintiffs stated they were rushed into signing the documents.  However, that do not contest the fact that both of them signed the documents.  Moreover, the deposition testimony submitted in support of their contention does not prove that they were rushed to sign documents, but that they "were rushing" (Defendants' Exh. 2 at p. 94).  At any rate, in their opposition to the motion for summary judgment, plaintiffs seem to have abandoned the "rushing" characterization of the events, focusing instead on the alleged invalidity of the releases (Docket No. 61 at pp. 20-29).

Please and be certain you understand the implications of signing. Express Assumption of Risk Associated with use of rental of Personal Watercraft and Related Activities

I, _____, do hereby affirm and acknowledge that **I have been fully informed of the inherent hazards and risks associated with motorized (e.g., jet ski) or non-motorized (e.g., kayak) and related water sport activities to which I am about to engage**, including but not limited to:

1) changing water flow, tides, currents, wave action, and ship's wakes;
**2) collision with any of the following:**
       **a) other participants,**
       b) the watercraft,
       **c) other watercraft,**
       d) man made or natural objects,
       e) shuttle boat;

3) wind shear, inclement weather, lightning, variances and extremes of wind, weather and temperature;
4) my sense of balance, physical condition, ability to operate equipment, swim and/or follow directions;
5) collision, capsizing, sinking, or other hazard that may result in wetness, injury, exposure to the elements, hypothermia, impact of the body upon the water, injection of water into my body orifices, and/or drowning;
6) the presence of insects and marine life forms;
7) equipment failure or operator error;
8) heat or sun related injuries or illnesses, including sunburn, sun stroke or dehydration;
9) fatigue, chill and/or reaction time and increased risk of accident.

I specifically acknowledge that I read, understand and agree to abide by the Personal Watercraft Operational instructions at all times and that I have been trained in the safe use of watersport equipment to my complete satisfaction, and I am physically/mentally able to participate in the water sport activities to which I am about to engage.

**I specifically waive any defense insofar as this contract is concerned that may arise as a result of any state or local law and/or regulation or policy that may impact its enforceability**.

Morgan et al v. Water Toy Shop, Inc. et al
Civil No. 16-2540 (PAD)
Opinion and Order
Page 5

RELEASE OF LIABILITY, WAIVER OF CLAIMS AND
INDEMNITY AGREEMENT.

In consideration of being allowed to participate in the above-
described activities, as well as the use of any of the facilities and the
use of the equipment of the below listed releases, I hereby agree as
follows:

1) **To waive and release any and all claims based upon
negligence, active or passive, with the exception of intentional,
wanton, or willful misconduct that I may have in the future
against all of the following named persons or entities herein
referred to as releasees**.
Water Toy Shop, Inc. Owner    (Company and/ or Individual)
_____ (Scheduled Personal Watercraft)
_____ (Scheduled Shuttle Boat (if applicable)

2) To release the releasees, their officers, directors, employees,
representatives, agents, and volunteers, and vessels from any
liability and responsibility whatsoever and for any claims or causes
of action that I, my estate, heirs, executors, or assigns may have for
personal injury, property damage, or wrongful death arising from
the above activities, whether caused by active or passive negligence
of the releassees or otherwise, with the exception of gross
negligence. By executing this document, I agree to hold the releases
harmless and indemnify them in conjunction with any injury or loss
of life that may occur as a result of engaging in the above activities.

3) By entering into this agreement, I am not relying on any oral or
written representation or statements made by the releasees, other
than what is set forth in this Agreement.

I hereby declare that I am of legal age and am competent to sign this
Agreement or, if not, that my parent or legal guardian shall sign on
my behalf and that my parent or legal guardian is in complete
understanding and concurrence with this Agreement.

**I have read this Agreement, understand it, and I agree to be bound by it**. SUMF at ¶¶

8, 20 (bold emphasis in the original, underlined emphasis added).[6]  The Declarations of Fitness

---

[6] Plaintiffs' explanation as to who gave them the documents does not controvert the language of the Rental Agreements that each
plaintiff signed.  Their undeveloped and unsupported contention as to the "content and admissibility of the documents" – without
any analysis, case law or support whatsoever – does not contest the statement either.

state: "by signing this form I still choose to participate in the activity with the rental property and agree to waive all responsibilities to all the above mentioned parties concerning any consequences that would result from my actions." SUMF at ¶ 9.[7]  Morgan did not read the contents of the Rental Agreement and Declaration of Fitness before signing them, or at any time before boarding the rented jet ski, despite having around one hour to spare between the time she signed the documents and when she boarded the jet ski.[8]  Neither did she ask Water Toy personnel anything about the document. SUMF at ¶ 11.

Before Castro was allowed to rent the jet ski, he was asked for his I.D. in order to verify that he was old enough to rent a jet ski, which he was; he signed a Rental Agreement and Declaration of Fitness; and was informed of the boundaries within which he could ride, the applicable speed limit and to stay clear of other people. SUMF at ¶ 13, 15.[9]  To that end, Mr. Héctor Peralta informed Castro the price for the jet ski ride; explained that he could only ride between the ESJ Tower and the Water Club Hotel; warned him stay away from the swimming area; told him to go slow until he passed the buoys; cautioned him not to get close to a nearby natural reserve and to stay away from other objects or persons because jet skis don't have breaks; described how the jet skis worked; let him know that when his time was up an employee would let

---

[7] The "disputed" and generalized statement made by plaintiffs "as to the content and admissibility of the documents" does not contest the language of the Rental Agreement and Declaration of Fitness.

[8] Plaintiff testified during her deposition that "thirty to forty five maybe an hour" elapsed (Docket No. 52-3 at p. 100, lines 14-17).

[9] Plaintiffs "disputed" this statement as follows: "Disputed as to hearsay and admissibility of the documents. With the exception of the witness testimonies, Defendants have not yet produced a single piece of evidence that can confirm the identity, address or telephone number of the person who caused the collision, someone allegedly named Mark Castro." See, Docket No. 61-1. But in addition to the general language disputing this statement, plaintiffs provided no discussion or authority in support of the argument. As such, the statement is deemed admitted. See, U.S. v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones"). Moreover, their "dispute" language does not comply with Local Rule 56 either. See also, Natal-Pérez v. Oriental Bank & Trust, ---F.3d.----, 2018 WL 618598, *1-*2 (D.P.R. January 30, 2018)(explaining what constitutes a proper denial or qualification under Local Rule 56).

him know; and provided him copy of a Rental Agreement and Declaration of Fitness, explaining

their contents and having him sign them.  SUMF at ¶ 16.[10]

Additionally, Mr. Jonathan Pérez informed Castro of the boundaries he had to observe

whilst riding, by pointing out the ESJ Tower, the Water Club Hotel and the buoys; told him not to

ride too far away so that help could get to him straight away in case something happened; warned

him not to go over five miles per hour as he left the buoys area in front of the Water Toy stand and

when he rode back to it to return his jet ski; and asked him to stay far away from people to avoid

any accident. SUMF at ¶ 17.[11]  Plaintiffs were taking a break in their jet ski, drifting next to the

buoys in front of the Water Toy stand, when Castro's jet ski collided with theirs at high speed,

without warning. SUMF at ¶ 19.

### III.    DISCUSSION

#### A.  General Principles

Plaintiffs claim defendants are liable to them under Puerto Rico law (Docket No. 61, pp.

2-3), which defendants deny (Docket No. 51, p. 1), stating that general principles of maritime law

rather than local law apply in this case, and under those principles they are not liable.  Id. at p. 2.

Because this case "involves a watercraft collision on navigable waters, it falls within admiralty's

domain." Yamaha Motor Corp., U.S.A. v. Calhoun, 516 U.S. 199, 206 (1996).  With admiralty

jurisdiction comes the application of substantive admiralty law. Id.  Federal maritime law may be

---

[10] Plaintiffs' denial does not comply with Local Rule 56. This time, they refer the court's attention to certain portions of plaintiffs' Exhibit 6. But nothing in those pages serve to properly controvert defendants' SUMF ¶ 16. Therefore, the statement is deemed admitted.

[11] Plaintiffs did not admit, deny or qualify this statement as required by Local Rule 56.  Moreover, their explanation does not contest this statement.

supplemented by state law to the extent that it "would not disturb the uniformity of maritime law." Kossick v. United Fruit Co., 365 U.S. 731, 738 (1961).

In maritime law, "the owner of a ship in navigable waters owes to all who are on board for purposes not inimical to his legitimate interests [e.g., passengers] the duty of exercising reasonable care under the circumstances of each case." Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 632 (1959); Muratore v. M/S Scotia Prince, 845 F.2d 347, 353 (1st Cir. 1988)(under maritime law, "a carrier owes a duty of exercising reasonable care towards its passengers under the circumstances"). The degree of required care must be in proportion to the apparent risk. See, Muratone, 845 F.3d at 353 (discussing concept)(citing Prosser, *Law of Torts*, Section 34, at 180 (4th ed. 1971)).

Plaintiffs contend that defendants are directly and vicariously liable under Puerto Rico law because Congress allowed Puerto Rico to adopt liability standards inconsistent with maritime law (Docket No. 61 at pp. 12-20). Congress can alter, qualify, or supplement admiralty law as it sees fit, provided it neither excludes a thing that falls clearly within the admiralty and maritime law nor includes a thing that clearly falls without, as long as the statute is coextensive with and operates uniformly in the whole of the United States. See, Zych v. Unidentified Wrecked and Abandoned Vessel, Believed to be the Seabird, 19 F.3d 1136, 1140 (7th Cir. 1994)(examining congressional power to revise and supplement maritime law).

However, Puerto Rico is an unincorporated territory of the United States. See, Maysonet-Robles v. Cabrero, 323 F.3d 43, 53 (1st Cir. 2003)(so describing Puerto Rico). It belongs to, but is not part of the United States, a category considered "foreign … in a domestic sense." See, United States v. Lebrón-Cáceres, 157 F.Supp.3d 80, 88 & n.11 (D.P.R. 2016)(discussing Puerto Rico's territorial status)(quoting Downes v. Bidwell, 182 U.S. 244, 287, 341-342, 346-347

(1901)).    Accordingly,  "… Congress can, pursuant to the plenary powers conferred by the Territorial Clause [U.S. Const. art. IV, § 3, cl. 2], legislate as to Puerto Rico in a manner different from the rest of the United States."  U.S. v. Rivera-Torres, 826 F.2d 151, 154 (1st Cir. 1987).[12]

In 1917, Congress enacted Puerto Rico's second organic act, commonly known as the *Jones Act*, 39 Stat. 951, Act of March 2, 1919.[13]  Under Section 37 of the *Jones Act*, the legislative authority of Puerto Rico extended "to all matters of a legislative character not locally inapplicable." In turn, Section Eight read:

> The harbor areas and navigable streams and bodies of water and submerged lands underlying the same in and around the island of Puerto Rico and the adjacent islands and waters, owned by the United States on March 2, 1917, and not reserved by the United States for public purposes, are placed under the control of the government of Puerto Rico … All laws of the United States for the protection and improvement of the navigable waters of the united States and the preservation of the interests of navigation and commerce, except so far as the same may be locally inapplicable, shall apply to said island and waters to its adjacent islands and waters.

Both provisions were reenacted as part of the *Federal Relations Act*.  See, 48 U.S.C. §§ 749 and 821.[14]  Interpreting and applying them in the context of admiralty and maritime law, the First

---

[12] The Territorial Clause gives Congress authority to "make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States."  As a territorial entity subject to congressional authority under the Territorial Clause, Puerto Rico nevertheless boasts "a relationship to the United States that has no parallel in … [United States'] history."  Puerto Rico v. Sánchez-Valle, ---U.S.----, 136 S. Ct. 1863, 1876 (2016).  In a well-documented and comprehensive commentary, "Why Puerto Rico Does Not Need Further Experimentation With Its Future: A Reply To The Notion of 'Territorial Federalism'," 131-3 Harvard Law Review Forum (January 2018), Juan R. Torruella examines the different phases of Puerto Rico's territorial relationship with the United States, divided into what the author has labeled "the four 'experiments' in the colonial governance of Puerto Rico by the United States."  Id. at pp.  65-66.

[13] For a description of the main features of the *Jones Act*, see, Lebrón-Cáceres, 157 F.Supp.3d at 92.  Juan R. Torruella, supra, focuses on the historical context of the statutory enactment.  The first organic act, known as the *Foraker Act*, 31 Stat. 77-86, had been enacted in 1900, two years after the United States invaded Puerto Rico during the Hispanic American War.  It established a civilian government in the territory, replacing the military government that had exerted control over Puerto Rico from October 1898.  See, Lebrón-Cáceres, 157 F.Supp.3d at 91-92 & n.17 (sketching statute); Juan R. Torruella, supra (surveying historical setting).

[14] Lebrón-Cáceres, 157 F.Supp.2d at 92-93, 99-101, and Juan R. Torruella, supra, provide useful information about this statute.

Circuit held in Guerrido v. Alcoa Steamship Co., 234 F.2d 349 (1956), that the rules of admiralty

and maritime law of the United States "are presently in force in the navigable waters of the United

States in and around the island of Puerto Rico to the extent that they are not locally inapplicable

either because they were not designed to apply to Puerto Rican waters **or because they have been

rendered inapplicable to these waters by inconsistent Puerto Rican legislation**," provided that

legislation does not "supplant a rule of maritime law which Congress in the exercise of its

constitutional power has made applicable to Puerto Rican waters." Id. at p. 355 (Emphasis

added).[15]  In line with Garrido, plaintiffs argue that defendants authorized Castro to operate the jet

ski, and as a result, are liable for the resulting damages under Articles 1802 and 1803 of the Puerto

Rico Civil Code, P.R. Laws Ann. tit. 31 §§ 5141-5142, and Puerto Rico Law 430 of December 21,

2000, P.R. Laws Ann. tit. 12 §§ 1401-1411 (Docket No. 61, pp. 4-7, 15-20).  Because it is

undisputed that Water Toy owned and rented the jet skis, unless otherwise stated the court

circumscribes the discussion of potential liability to that entity.

### B.  Puerto Rico Law

Article 1802 imposes liability for personal acts, not for acts of others, providing in part that

"a person who by an act or omission causes damage to another through fault or negligence shall

be obliged to repair the damage so done."  P.R. Laws Ann. tit. 31 § 5141.  See, Burgos-Oquendo

v. Caribbean Gulf Refining Corp., 741 F.Supp. 330, 332 (D.P.R. 1990)(discussing concept).  To

establish liability, the plaintiff must show: (i) a duty of care requiring defendant to conform to a

certain standard of conduct; (ii) breach of that duty; (iii) damages; and (iv) a causal connection

---

[15] Gustavo A. Gelpí, "Maritime Law in Puerto Rico, An Anomaly in a Sea of Federal Uniformity," published as part of *The Constitutional Evolution of Puerto Rico and Other U.S. Territories (1898-Present)*, Interamerican University of Puerto Rico, Metropolitan Campus (2017), p. 57, discusses Garrido and other judicial decisions in light of the interplay between Federal maritime law and Puerto Rico.

between the breach and the damages.  See, De-Jesús-Adorno v. Browning Ferris Industries of Puerto Rico, Inc., 160 F.3d 839, 842 (1st Cir. 1995)(so explaining).

In general, the duty of care is defined by the tenet that one must act as would a prudent and reasonable person under the same circumstances.  See, Vázquez-Filippetti v. Banco Popular de Puerto Rico, 504 F.3d 43, 49 (1st Cir. 2007)(so observing).  This includes complying with statutes, regulations, and ordinances relevant to the action.  See, Sánchez v. Seguros Triple S, Inc., 687 F.Supp.2d 6, 9 (D.P.R. 2010)(setting forth and applying formulation).  The standard applies to those who operate businesses for profit, commanding them to exercise reasonable care toward business invitees.  See, Calderón-Ortega v. U.S., 753 F.3d 250, 252 (2014)(recognizing obligation).

In turn, Article 1803 codifies a special type of vicarious liability, a type of liability based in part on the acts or omissions of others.  See, P.R. Laws Ann. tit. 31 § 5142.  To than end, it states that the obligation imposed by Article 1802 "is demandable not only for personal acts and omissions, but also for those of the persons for whom …[the defendant is] responsible," including under that rubric the liability of the father or mother for damages caused by minor children; of guardians for the damage cause by the person under their authority who live with them; of employers for the damage caused by an employee acting in the course of his employment; of masters or directors of arts and trades for damage caused by their pupils or apprentices; and of the Government of Puerto Rico under certain pre-established circumstances.  Id.  The enumeration is taxative, not of an exemplary nature.  See, Burgos-Oquendo, 741 F.Supp. at 333 (so acknowledging).  Imposition of vicarious liability in other instances must be anchored in alternate precepts or legislation, like Law 430.  See, id. (dismissing complaint brought against lessor under

<u>Morgan et al</u> v. <u>Water Toy Shop, Inc. et al</u>
Civil No. 16-2540 (PAD)
Opinion and Order
Page 12

Article 1803 in absence of provision establishing responsibility in the lessor for actions of the lessee).

At common law, vicarious liability implies that by reason of some preexisting relation between two parties, one of them may be held automatically liable to a third party for the negligence of the other even if he is free from fault. <u>See</u>, Prosser and Keeton, *The Law of Torts*, West Publishing Co., 1984, p. 499 (explaining concept). The doctrine applies in admiralty unless excluded by statute. <u>See</u>, Thomas J. Schoenbaum, <u>supra</u> at p. 188 (so noting). In that context, the negligence of employees is imputed to the owner of the vessel upon a finding of master-servant relationship, but in absence of that relationship, the shipowner is not liable *in personam* for the negligence of persons to whom the vessel is entrusted. <u>Id.</u> Under Article 1803, however, liability does not attach if the defendant shows that he employed the diligence expected of a good father of family, the *bonus pater familias*, to prevent the damage. <u>Id.</u> Diligence is predicated on how a prudent and reasonable man would have acted in connection with the obligations arising from the situations enumerated in Article 1803. <u>See</u>, <u>Pueblo</u> v. <u>Rivera Rivera</u>, 23 P.R. Offic. Trans. 641, 1989 WK 607294, *§ V (Rebollo López, J., concurring)(analyzing standard).

By contrast, Law 430 operates much like vicarious liability does at common law, providing in part that "[t]he owner of any ship or navigation vessel shall be responsible for damages caused when operating any of these, with fault or negligence, and when it is operated or under control of any person who, with the main purpose of operating or allowing it to be operated by a third party, obtains possession of it through express or tacit authorization of the owner." P.R. Laws Ann. tit. 12 § 1406(6)(h). By extension, it imposes liability on the principal –the vessel's owner- for the damages caused by the wrongful operation of the vessel when that vessel has been operated with the owner's express or tacit authorization, irrespective of whether the owner has acted –in the

words of Article 1803 of the Civil Code- with the diligence of a good father of family to avoid the damage.

As enacted, the provision is preempted by the Limitation of Liability Act of 1851, as amended, 46 U.S.C. § 30501 *et seq.*, because it conflicts with the negligence standard set in the federal statute.  See, In the Matter of Rockaway Jet Ski, LLC, 2016 WL 8861617, *603-*604, (holding New York's Navigation Act § 48 preempted by Limitation Act, as it imposes vicarious liability on the owners of personal watercrafts if the watercraft is operated by a person who used it with the owner's permission, irrespective of the owner's wrongdoing)(quoting In re Hartman, 2020 WL 1529488, *4 n.10 (D.N.J. Apr. 15, 2010)(to the extent the claimant argues that the jet ski owner is strictly liable under state law, the claim is preempted because the state's strict liability standard directly conflicts with the negligence standard of the Limitation Act)).  For the same reason, so too here.  And given that the Limitation Act applies in Puerto Rico,[16] its preemptive effect comports with Garrido, banning reliance on Law 430 to impose vicarious liability on the vessel owner in the absence of the owner's negligence.

Against this background, plaintiffs argue that Water Toy Shop violated Law 430 in: (1) operating an illegal additional kiosk a quarter of a mile east of the area specified in the permit issued by the Puerto Rico Department of Natural Resources ("DNR"); (2) renting a jet ski that was not expressly identified in the permit; (3) using a rental ski as a patrol boat operated by a licensed individual who nevertheless had not received the required first aid training; (4) operating a rental stand without a valid navigation license; (5) keeping defective records lacking customers' identification, addresses, tag of the jet ski  used and date and time it was returned; and (6) renting

---

[16] See, Aponte v. Caribbean Petroleum, 141 F.Supp.3d 166, 171 (D.P.R. 2015)(applying Limitation Act in Puerto Rico).

skis without informing customers of navigation rules, safety briefing and prohibited activities (Docket No. 61 at pp. 5-7), making it liable for the collision and resulting damages.  But merely violating a statute or regulation is not a synonym for liability in Puerto Rico, since in order for liability to attach, there must be a causal relationship – adequate cause – between the violation and the damages.  See, González v. Puerto Rico Elec. Power Authority, 1993 WL 525644, *8 (D.P.R. Nov. 23, 1993)(so holding)(citing Pacheco v. A.F.F., 12 P.R. Offic. Trans. 367 (1982)).[17]

Adequate cause is not an event in the absence of which the damage would not have occurred, but that which in general experience causes it.  See, Cárdenas Mazán v. Rodríguez Rodríguez, 125 D.P.R. 702, 710 (1990) (so stating); Ganapolsky v. Boston Mut. Life Ins. Co., 138 F.3d 446, 447-448 (1st Cir. 1998)(accidental injury to plaintiff's left foot resulting from tripping on a two-inch step at entrance to men's room in a theater not adequate cause of gangrene requiring foot's amputation, as the infection that lead to the gangrene normally does not arise from tripping on a step).  As such, causation is a function of foreseeability, requiring plaintiff to show that the injury was reasonably foreseeable.  See, Marshall v. Pérez Arzuaga, 828 F.2d 845, 847 (1st Cir. 1987)(discussing foreseeability as part of the "causal nexus" element of tort action); Vázquez-Filipetti, 504 F.3d at 49 (highlighting centrality of foreseeability to a successful tort claim).[18]

Within this framework, that violations may have occurred in connection with items (1) to (5)–an unsubstantiated assumption at best- is not causally linked to Castro's crashing of his jet ski

---

[17] The term "adequate cause" is similar to "proximate cause."  See, Rodríguez v. Puerto Rico, 825 F.Supp.2d 341, 347 (D.P.R. 2011)(so noting)(citing Tokyo Marine and Fire Ins. Co., Ltd. v. Pérez &Cia. de Puerto Rico, Inc., 142 F.3d 1, 7 &n. 5 (1st Cir. 1998)(referring to Puerto Rico decisions explaining adequate cause)).

[18] Foreseeability allows courts to reconcile physical or natural cause and effect relationships with the causation necessary to establish civil liability.  See, González, 1993 WL 525644 at *4 (so explaining).  If that were not so, "damages following a breach … [would] be linked to each other in an endless chain of events."  Federal Deposit Insurance Corporation v. Arrillaga-Torrens, 212 F.Supp.3d 312, 353 (D.P.R. 2016).

onto plaintiffs', for there is no evidence in the record showing it was foreseeable for a reasonable person to anticipate that a jet-ski collision would result from those violations.[19]  Foreseeability cannot be established through the simple fact that an accident occurred.  Id. (so recognizing).[20]  The situation is no different in admiralty.  See, Poulis-Minott v. Smith, 388 F.3d 354, 363 (1st Cir. 2004)(dismissing claim in admiralty for lack of proof that under the circumstances, there was a reasonable possibility that compliance with the regulatory standard would have prevented the accident).[21]

Water Toy's obligation to provide Castro with an oral or written orientation on the navigation rules the Commissioner of Navigation of Puerto Rico prepared in accordance with Law 430 stands on a different footing, as it directly implicates the provision of information necessary to safely operate the jet ski.  See, Wills v. Amerada Hess Corp., 379 F.3d 32, 42-45 (2d Cir. 2004)(distinguishing between statutory or regulatory provisions naturally and logically linked to maritime safety and those not so linked).  The uncontested facts, however, show that Water Toy did provide adequate training to Castro in connection with the operation of the jet ski as well as of the applicable navigation rules.  See, SUMF at ¶ 15-17.  And the Rental Agreement Castro executed additionally confirms that he: (1) was fully informed of the inherent risks associated with

---

[19] At the most, those alleged violations would warrant administrative sanctions under Section 1407 of Law 430.  Yet there is no evidence that the DRN sanctioned, fined, suspended or revoked Water Toy's permit for those reasons.

[20] See also, Marshall, 828 F.2d at 848 (comparing Negrón v. Orozco, 113 D.P.R. 921 (1983)(finding Puerto Rico Police liable for a shooting death in a police station because intervening act, though criminal and intentional, was reasonably foreseeable) with Rivera v. Cruz, 87 J.T.S. 51(1987)(no liability since defendant had no reason to anticipate the criminal act)).

[21] Poulis-Minott measured liability against the so-called Pennsylvania Rule, pursuant to which if a plaintiff in admiralty establishes both that the defendant breached a statutory duty and the breach is relevant to the causal question, the defendant assumes the burden of proving that its breach could not have caused plaintiff's damages.  See, Poulis-Minott, 388 F.3d at 363 (describing Pennsylvania Rule).  The Rule aims to enforce strict compliance with maritime regulations pertaining to the safe operation of ships.  Id.  So to invoke it, the plaintiff must show a relationship between the regulatory violation and the injury.  Id.  Plaintiffs never invoked the Pennsylvania Rule, but assuming they had done so, there is no evidence linking a safety-related statutory violation with the accident.

jet skis; (2) understood and agreed to abide by the personal watercraft operational instructions he

was given; and (3) was trained in the safe use of water sport equipment to his complete satisfaction.

All in all, the record does not sustain a finding of liability against Water Toy deriving from a

negligent act causally connected to the damages claimed.

### C. Waivers

Beyond the issue of liability, plaintiffs executed a waiver precluding liability as to Water

Toy and Axel Acosta – Water Toy's sole owner and president, representative and agent – except

for gross negligence, which the complaint only imputed to Castro.  Plaintiffs attack the waiver,

essentially characterizing it as unenforceable (Docket No. 61, at pp. 20-31).  Voluntary waivers of

liability for negligence in maritime activities are enforceable provided they: (1) are consistent with

public policy; (2) do not configure a contract of adhesion; and (3) are drafted in clear and

unambiguous language.  See, Olmo v. Atlantic City Parasail, 2016 WL 1704365, *9 (D.N.J. April

28, 2016)(articulating and applying test)(citing Olivelli v. Sappo Corp., Inc., 225 F.Supp.2d 109,

116 (D.P.R. 2002)).  By these standards, the waivers that plaintiffs signed are valid and

enforceable.

First, exculpatory clauses waiving liability for negligence in maritime recreational

activities are consistent with public policy.  See, Cobb v. Aramark Sports and Entertainment

Services, LLC, 933 F.Supp.2d 1295, 1299 (D. Nevada 2013)(so acknowledging); Olmo, 2016 WL

1704365, at *10 (same).[22]  Thus, parties may enter into agreements to allocate risks inherent in

those activities, allowing operators to contractually disclaim liability for their own negligence. See,

---

[22] Public policy does prohibit a party to a maritime contract to shield itself contractually from liability for gross negligence.  See, Royal Ins. Co. of America v. Southwest Marine, 194 F.3d 1009, 1016 (9th Cir. 1999)(discussing issue).  The prohibition does not apply here, because as pointed out in the text, the complaint only raised gross negligence allegations as to Castro.

Brozyna v. Niagara Gorge Jetboarding, Ltd., 2011 WL 4553100, *4-*5 (W.D. N.Y. Sept. 29, 2011)(explaining exculpatory waivers).[23]   Relying on In the Matter of Rockaway Jet Ski LLC, 2016 WL 8861617, however, plaintiffs argue the waiver violates public policy because it has been invoked to prevent them from asserting negligence claims based on the violation of Law 430, a safety statute which, at bottom, does not contain a waiver authorization clause (Docket No. 61, at pp. 23, 27).

In Rockaway, the court evaluated whether an exculpatory clause can release negligence claims premised on the violation of a state safety statute, New York Navigation Law 73(a)(2), which (1) required businesses renting personal watercraft to provide a video or in-water demonstration of how to safely operate watercraft; and (2) prohibited those businesses from renting a personal watercraft to an individual unless that individual demonstrated ability to (i) operate the personal watercraft, and (ii) use applicable safety equipment.   Id. at *595-*596.   The court surveyed relevant caselaw, finding that some jurisdictions considering the same question did not permit parties to waive negligence claims premised on the violation of safety statutes, whereas other jurisdictions permitted the waivers.   Id. at *598-*599.   It sided with the former, noting "the apparent absence of an established admiralty rule on this question," (id. at *601); that statutory violations amount to negligence per se; and that waivers of a negligence per se claim violate public policy.   Id. at *602.

Applying the reasoning to Law 430, the only statutory item involving safety is the one requiring information to safely operate the jet ski.   But renting out a jet ski without taking steps to

---

[23] Congress could block the enforceability of these waivers like it did in 46 U.S.C. § 183(c), which prohibits a vessel owner from limiting its liability for its own negligence when carrying passengers between ports of the United States or from a port of the United States to a foreign port.   But that provision applies only to common carriers.   See, Waggoner v. Nags Head Water Sports, Inc., 141 F.3d 1162, *5-*6 (4th Cir. 1998)(unpublished)(so holding).   No common carrier was involved in the case sub judice.

provide for its safety operation falls within the realm of negligence regardless of whether it is statutorily required.  See, In re Hartman, 2010 WL 1529488, *4 (D.N.J.  Apr. 15, 2010)(no need to resort to state safety statute to establish negligence in case originating in jet ski accident, because irrespective of statute, ski owner owed plaintiff a duty of care).  And as pointed out above, those actions may be waived.  See, Waggoner, 141 F.3d at *8-*9 (rejecting argument that exculpatory clause in recreational boat rental contract violated public policy based in part on Restatement (Second) of Contracts' explanation that "a party to a contract can ordinarily exempt himself from liability for harm caused by his failure to observe the standards of reasonable care imposed by the law of negligence").  Moreover, although Law 430 imposes vicarious liability, that type of liability is less about boat safety and more about ensuring compensation for injured parties.  See, Rockaway, 2016 WL 8861617 at *604 (so observing in validating waiver to protect vessel owner from vicarious liability imposed by state navigation law).  In the end, Law 430 does not prohibit waivers, and neither does public policy.

Second, adhesion contracts are "take it or leave it" contracts with no opportunity for negotiation between parties with unequal bargaining power.  Id. at *6 (delineating elements of adhesion).  The definition does not fit waivers used in connection with voluntary recreational pursuits rather than rendition of essential services such as medical care, where courts would be more likely to find that a contract of adhesion exists.  See, Olmo, 2016 WL 1704365 at *10 (so recognizing).  For the same reason, liability waivers for voluntary recreational activities in navigable waters are not considered adhesion contracts, as the plaintiff has the option of signing or turning around and declining to do business with the defendant.  Id. (waiver in case involving parasailing and related activities).  So too here, for plaintiffs were free to choose another jet ski rental company or leave the beach without ridding a jet ski at all.  See Olivelli, 225 F.Supp.2d at

Morgan et al v. Water Toy Shop, Inc. et al
Civil No. 16-2540 (PAD)
Opinion and Order
Page 19

110-11, 118-120 (waiver of liability not considered adhesion contract in part because scuba diving

is a strictly voluntary recreational pursuit and deceased was free to decline defendant's services if

she did not wish to assent to the terms of the waiver); Brozyna, 2011 WL 4553100 at *6 (same

with respect to jetboating excursion, as plaintiff had to option to decline to participate in the

excursion); Murley ex rel. Estate of Murley v. Deep Explorers, Inc., 281 F.Supp.2d 580, 589-590

(E.D.N.Y. 2003)(if scuba diver did not agree to or understand any of the clauses of the release, he

was free to write "VOID" or decline defendant's services).[24]

Third, the waivers are clear and unambiguous. Their language (1) identified the specific

risks inherent to and associated with riding a jet ski;[25] (2) explained and highlighted the fact that,

by executing the Agreement, plaintiffs waived and released any and all claims based upon

negligence against Water Toy, its officers, directors, employees, representatives, agents, and

volunteers and vessels; and (3) stated that plaintiffs accepted responsibility for the consequences

of riding the rented jet skis. The language should have put plaintiffs on notice of its legal

significance and effect. Murley, 281 F.Supp.2d at 580-581, 591 (validating liability release with

similar characteristics in dismissing action arising out of scuba diving accident that resulted in

diver's death). Even more, both plaintiffs and Castro signed the Agreements before boarding their

respective jet skis, acknowledging that they (1) were fully informed of the hazards and risks

---

[24] Still and all, "adhesion does not imply nullity of contract" in Puerto Rico. Nieves v. Intercontinental Life Ins. Co. of Puerto Rico, 964 F.2d 60, 63 (1st Cir. 1992). If the wording of the contract is explicit and its language clear, its terms and conditions are binding on the parties. Id. As will be discussed, the waivers here satisfy this requirement.

[25] Those risks included (1) changing water flow, tides, currents, wave action, and ship's wakes; (2) collision with any of the following: a) other participants, b) the watercraft, c) other watercraft, d) man made or natural objects, e) shuttle boat; (3) wind shear, inclement weather, lightning, variances and extremes of wind, weather and temperature; (4) my sense of balance, physical condition, ability to operate equipment, swim and/or follow directions; (5) collision, capsizing, sinking, or other hazard that may result in wetness, injury, exposure to the elements, hypothermia, impact of the body upon the water, injection of water into my body orifices, and/or drowning; (6) the presence of insects and marine life forms; (7) equipment failure or operator error; (8) heat or sun related injuries or illnesses, including sunburn, sun stroke or dehydration; (9) fatigue, chill and/or reaction time and increased risk of accident.

associated with the jet ski and related water sports activities, including collision with other participants or watercrafts; (2) read, understood, and agreed to abide by the "Personal Watercraft Operational" instructions at all times; (3) were trained in the safe use of watersports equipment to their complete satisfaction; and (4) were physically and mentally able to participate in the water sports activities.

Fourth, plaintiffs are college-educated U.S. citizens, who were interested in participating in a recreational, hazardous maritime activity, one conditioned upon the jet ski's owner and renter being released from liability as set forth in the waivers, a condition plaintiffs voluntarily agreed to.[26]  Plaintiffs state that Ms. Morgan signed the documents without reading them (Docket No. 61-1 at ¶ 11).   Nonetheless, the defendant is entitled to rely in good faith upon the reasonable appearance of consent that plaintiff created.  See, Chieco v. Paramarketing, Inc., 228 A.D. 2d 462, 643 N.Y.S. 2d 668 (2d Dept. 1996)(holding release and waiver for paragliding lesson valid despite plaintiff's allegation that he did not read or understand the document), cited in Murley, 281 F.Supp.2d at 591; Dan B. Dobbs, *The Law of Torts*, 217-218 (West 2000) (discussing defendant's reasonable reliance on plaintiff's acts and words to infer binding consent).   Private and uncommunicated reservations to a waiver does not subject defendant to liability.  See, Dan B. Dobbs, supra (so noting).  Therefore, plaintiffs cannot escape the consequences of their voluntary decisions, bypassing the contracts they signed to avoid the legal consequences of their free choice, for there is no evidence of deceit, violence or intimidation exerted on plaintiffs to coerce or wrongfully induce them to sign the waivers, or that they did so by mistake, thinking they were signing something else.  See, P.R. Laws Ann. tit. 31 § 3404 (codifying elements voiding consent

---

[26] Morgan had signed similar documents in order to rent jet skis before the accident.  At the time of the accident, she had a Bachelor's degree in Biology, and Kennedy had a High School diploma with one year of nursing school.  SUMF at ¶ 2.

under Puerto Rico law, to include violence, intimidation, deceit and error); <u>Cutchin</u> v. <u>Habitat Curacao-Maduro Dive Fanta-Seas, Inc.</u>, 1999 WL 33232277, *3 (S.D. Fla. Feb. 8, 1999)(applying pre-accident waiver to dismiss action arising from diving accident, as there was no evidence showing that plaintiff was coerced to sign the document); <u>Murley</u>, 281 F.Supp.2d at 590 (dismissing suit based on scuba diver's death in part because there was no evidence that defendants procured release by fraud or that deceased signed release under duress); .

Plaintiffs posit the waivers mention negligence but not fault, and cannot bar their action because the complaint alleges that their damages result from defendants' "fault" or "negligence" (Docket No. 61 at p. 25). These terms have specific meanings in the civil code context of Puerto Rico law. <u>See</u>, <u>CMI Capital Market Investment, LLC</u> v. <u>González-Toro</u>, 520 F.3d 58, 64 (1st Cir. 2008)(so recognizing). Fault consists in the failure to exercise due diligence, the use of which would have prevented the wrongful result, and requires the execution of a positive act causing a damage to another person different from the one who executed it. <u>Id.</u> Negligence supposes an omission producing the same effect as fault (<u>id.</u>), predicated as with fault, on the failure to exercise due diligence. <u>See</u>, <u>Sánchez</u> v. <u>Esso Standard Oil de Puerto Rico, Inc.</u>, 2010 WL 3069551, *4 (D.P.R. Aug. 2, 2010)(discussing terms). Both concepts "have in common that the act be executed or the omission incurred without an injurious intent," <u>González-Toro</u>, 520 F.3d at 64, and for the same reason, have been described as "faces of the same coin." <u>Sánchez</u>, 2010 WL 3069551 a *4 (<u>quoting</u> <u>Gierbolini</u> v. <u>Employers Fire Ins. Co.</u>, 4 P.R. Offic. Trans. 1197, 1201 (1976).

On this reading, it is apparent that to the extent the waiver mentions negligence it necessarily contemplates the failure to exercise due diligence, the same operative feature underlying fault, reflecting the waiver's reference to both active and passive negligence. <u>See</u>, <u>Malave-Felix</u> v. <u>Volvo Car Corp.</u>, 946 F.2d 967, 971 (1st Cir. 1991)("An actor is at fault, **or**

negligent, when he fails to exercise due diligence to prevent foreseeable injury")(emphasis added). Even more, plaintiffs' factual allegations are couched in negligence, not fault.  See, Complaint, ¶ 30 ("As a consequence of the accident caused by the negligence of all defendants, … [Ms. Morgan] has suffered mental anguish, physical injuries and scars;" ¶ 43 ("As a consequence of the accident caused by the negligence of all defendants ,,, [Ms. Kennedy] has suffered mental anguish, and physical injuries").

Plaintiffs allege the waiver does not mention Axel Acosta, the insurance company, or Acosta Water Sports (Docket No. 61, pp. 27-28).  Nonetheless, the waiver expressly releases Water Toy Shop's officers, directors, and agents, and Axel Acosta is Water Sports' president and resident agent (Docket No. 61-1 at ¶ 23).  In addition, the insurance company's exposure is linked to that of its insured.  If the action fails as to Water Toy Shop and Axel Acosta, there is no viable claim against their insurer.  Acosta Water Sports would not benefit from the waiver, though, as it is not one of the releases.  Only one conclusion follows: the waivers and releases are valid, and must be enforced except as to Acosta Water Sports.

## IV.    CONCLUSION

For the reasons stated, the motion for summary judgment (Docket No. 52) is GRANTED and the claims against Water Toy, Axel Acosta and Ironshore Indemnity DISMISSED WITH PREJUDICE.  Since it is uncontested that Acosta Water Sports is not the owner of the jet skis at issue, and did not seem to have incurred in any wrongdoing related to the accident, plaintiffs shall show cause, by April 20, 2018 as to why their claims against Acosta Water Sports should not be dismissed as well.  In their motion, plaintiffs shall include relevant caselaw arising out of analogous facts and procedural settings in support of their position.

<u>Morgan et al</u> v. <u>Water Toy Shop, Inc. et al</u>
Civil No. 16-2540 (PAD)
Opinion and Order
Page 23

**SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of March, 2018.

<u>s/Pedro A. Delgado Hernández</u>
PEDRO A. DELGADO HERNÁNDEZ
United States District Judge
